UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-CR-0262 (PJS/FLN) |
| | Case No. 18-CV-1472 (PJS) |
| Plaintiff, | |
| v. | ORDER |
| CALVIN JAMES FERGUSON, | |
| Defendant. | |

David P. Steinkamp, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Calvin J. Ferguson, pro se.

Defendant Calvin Ferguson pleaded guilty to being a felon in possession of a firearm and was sentenced to 46 months' imprisonment. Ferguson did not appeal. Ferguson now moves under 28 U.S.C. § 2255 to vacate his conviction on grounds of ineffective assistance of counsel. For the reasons that follow, Ferguson's motion is denied. Because the record conclusively demonstrates that Ferguson is not entitled to relief, no hearing is necessary. 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

I. BACKGROUND

On June 23, 2016, at approximately 1:50 am, Trooper Lee McClure of the Minnesota State Patrol was finishing up a traffic stop in Minneapolis. ECF No. 70 at 14-16. As he was walking back to his squad car, Trooper McClure "heard a vehicle

accelerate very quickly and hard." *Id.* at 20. He turned around, saw two vehicles "quickly accelerating," got into his squad car, and started pursuing the two vehicles "to get a radar reading." *Id.* at 20-21. He locked in on a Dodge Charger being driven by Ferguson and clocked him going 92 miles per hour. *Id.* at 22. Trooper McClure continued to pursue Ferguson and witnessed Ferguson extinguish his car's headlights, run a red light, and almost crash into a city bus. *Id.* at 24; ECF No. 33 at 1. At that point, Trooper McClure turned on his lights and sirens in an attempt to get Ferguson to pull over, but Ferguson refused. ECF No. 70 at 24-26. Eventually, Ferguson slowed his car near a fire station in south Minneapolis, jumped out of the car while it was still in gear, and fled from Trooper McClure on foot. *Id.* at 26; ECF No. 33 at 1. Ferguson's car continued rolling and crashed into the fire station. *Id.*

Trooper McClure was able to arrest a passenger of Ferguson's (after the passenger tripped while fleeing on foot), but Ferguson got away. ECF No. 70 at 27. After securing the passenger, Trooper McClure examined Ferguson's abandoned car and spotted a gun stashed in a sock on the driver's side of the car between the seat and front console. *Id.* at 27-31. (The gun was later tested and found to contain Ferguson's DNA. ECF No. 49 at ¶ 12.)

Ferguson was eventually apprehended and charged with one count of being a felon in possession of a firearm. ECF No. 1. Ferguson's attorney, Reynaldo Aligada,

moved to suppress evidence of the gun, arguing that the search of Ferguson's car was unlawful. Magistrate Judge Franklin L. Noel held a hearing on the motion to suppress on December 7, 2016. *See* ECF No. 70. At the hearing, Trooper McClure testified to the facts described above. *Id.* at 14-53. Aligada submitted a brief after the hearing, arguing that the property inside the car was not abandoned, that the search of the car could not be justified as an inventory search, and that the search of the car was not lawful under the plain-view doctrine. ECF No. 28. Before Judge Noel ruled on the motion to suppress, the parties reached a plea agreement. ECF No. 29. Aligada withdrew the motion to suppress and all other pretrial motions. *Id.*

On January 18, 2017, Ferguson pleaded guilty to one count of being a felon in possession of a firearm. *See* ECF No. 80. At his change-of-plea hearing, the Court accepted Ferguson's plea after thoroughly questioning him. *Id.*

Ferguson was sentenced on May 23, 2017 to 46 months' imprisonment, the bottom of the range recommended by the Sentencing Guidelines. ECF Nos. 47, 48. Ferguson did not appeal his sentence. *See* ECF No. 57 at 1-2. A year later, Ferguson filed the pending § 2255 petition, arguing that his conviction should be vacated because he received ineffective assistance of counsel.

Ferguson complains about two aspects of Aligada's representation. First, Ferguson alleges that Aligada refused to answer his questions regarding the law that

governed his suppression motion, leaving Ferguson unable to make a fully informed decision about whether that motion should be withdrawn and the government's plea offer accepted. ECF No. 58 at 2-3. Second, Ferguson alleges that Aligada provided ineffective assistance of counsel by failing to challenge what Ferguson characterizes as the "traffic stop." *See* ECF No. 83 at 4-5, 10-11. The Court will address Ferguson's arguments in turn.

II. ANALYSIS

Under 28 U.S.C. § 2255, a defendant serving a federal sentence may move "to vacate, set aside or correct [his] sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States." Ferguson alleges that his sentence was imposed in violation of the Sixth Amendment, because he was denied effective assistance of counsel. To establish ineffective assistance of counsel, Ferguson must satisfy the familiar two-part *Strickland* standard, establishing both deficient performance and prejudice. *Hill v. Lockhart*, 474 U.S. 52, 54-57 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is, Ferguson must show both that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

*A. Aligada's (Lack of) Advice During the Plea-Bargaining Process*

Ferguson's first complaint is that Aligada provided ineffective assistance of counsel by refusing to answer his questions about the law that applied to his suppression motion. According to Ferguson, Aligada would tell him only that the motion would not succeed. As a result, Ferguson says, he was unable to make a fully informed decision about whether to withdraw that motion and accept the government's plea offer.

When a defendant's contention that his plea was uninformed or involuntary due to ineffective assistance of counsel is contradicted by his own sworn testimony, his claim is subject to summary dismissal. *See, e.g.*, *United States v. Unger*, 635 F.2d 688, 690-92 (8th Cir. 1980). Here, Ferguson's contentions are contradicted by the testimony that he gave—under oath and subject to penalty of perjury—at his change-of-plea hearing.

At that hearing, Ferguson repeatedly assured the Court that he did not have any questions for his attorney or the Court and that he was making a fully informed decision to plead guilty. The Court asked Ferguson whether he was "satisfied with the advice and the services that [he] received from Mr. Aligada." ECF No. 80 at 6. Ferguson swore that he was. *Id.* The Court asked Ferguson whether he had "fully discussed the charges [he was facing] with Mr. Aligada" and had "told [Aligada] everything that [he] want[ed Aligada] to know about [his] case." *Id.* Ferguson swore

that he had.  *Id.*  The Court asked Ferguson whether Aligada had explained the charges made against Ferguson and answered all of Ferguson's questions about those charges. *Id.* at 11-12.  Ferguson swore that he had.  *Id.* at 12.  The Court asked Ferguson whether Aligada went through the plea agreement with him and explained all of its terms.  *Id.* at 13.  Ferguson swore that he had.  *Id.*  The Court asked Ferguson whether Aligada answered "all of [his] question about the plea agreement."  *Id.*  Ferguson swore that he had.  *Id* at 14.  The Court asked Ferguson whether he was going to plead guilty "voluntarily and of [his] own free will."  *Id.* at 24.  Ferguson swore that he was.  *Id.* Finally, for good measure, the Court asked Ferguson whether he "[had] any questions for [the Court] or [his] attorney" before the Court asked for his plea.  *Id.* at 25.  Ferguson said nothing about unanswered questions regarding the suppression motion; instead, Ferguson assured the Court that he did *not* have any questions for either his attorney or the Court.  *Id.*

All of these responses contradict Ferguson's allegation that he had questions about the law governing his suppression hearing that Aligada had refused to answer, leaving Ferguson without the information he needed to make an informed decision about whether to plead guilty.  While Ferguson is correct that his testimony "is not dispositive," ECF No. 83 at 3, his testimony nevertheless "constitute[s] a formidable

barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* (citations omitted). Ferguson's new allegations do not overcome this strong presumption. *See Nguyen v. United States*, 114 F.3d 699, 702-04 (8th Cir. 1997) (affirming a district court's summary dismissal of a § 2255 petition where the petitioner's claims were contradicted by statements that he made under oath at his plea hearing); *Voytik v. United States*, 778 F.2d 1306, 1308-10 (8th Cir. 1985) (same); *Unger*, 635 F.2d at 691-92 (same).

The Court also notes that the advice that Ferguson says he received from Aligada—that the suppression motion would not succeed—was correct. In suggesting otherwise, Ferguson points to some confusion in the record about whether the door to his abandoned car was open when Trooper McClure claims to have looked through it and seen the gun. But that confusion was relevant only to whether the search was lawful under the plain-view doctrine. Even if the plain-view doctrine did not apply, the search was nevertheless lawful. Ferguson jumped out of his car—while the keys were still in the ignition and the car was still in gear—and fled from Trooper McClure on

foot. Under Eighth Circuit precedent, there is little doubt that the car was abandoned, and thus little doubt that Trooper McClure did not need to obtain a warrant to lawfully search the car. *See, e.g., United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (suppression was not warranted where the defendant "led officers on a high-speed chase, and abandoned the vehicle"); *United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011) (suppression was not warranted because the vehicle was abandoned when it was left "open, with the keys in the ignition, the motor running, in a public area," and the defendant "ran from the police"); *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir. 1987) (suppression was not warranted when the defendant "fled the scene of [a] murder, leaving [his] van unoccupied and unlocked," because "he [had] abandoned his expectation of privacy in the van and its contents"); *United States v. Walton*, 538 F.2d 1348, 1351, 1354 (8th Cir. 1976) (suppression was not warranted where the defendant's car was left unlocked with the windows open in a public parking lot and the defendant fled the scene, as the vehicle was abandoned).

For these reasons, the Court rejects Ferguson's claim that he did not receive effective assistance of counsel with respect to his suppression motion.

### B. Aligada's Failure to Challenge the "Traffic Stop"

Ferguson also contends that Aligada was ineffective for failing to argue that Trooper McClure's purported seizure of Ferguson—and not just Trooper McClure's

search of Ferguson's car—violated the Fourth Amendment. Specifically, Ferguson argues that Trooper McClure conducted a "traffic stop" when he turned on his lights and siren—and that, at the time that Trooper McClure conducted this "traffic stop," he had no reason to believe that Ferguson had violated the law.

Ferguson's argument is borderline frivolous for several reasons:

First, a police officer does not conduct a "traffic stop"—or, put in constitutional terms, seize an individual for purposes of the Fourth Amendment—merely by turning on his lights and siren and pursuing the individual. The Supreme Court said as much in *Brower v. County of Inyo*, in which the Court observed that no "seizure" occurs for Fourth Amendment purposes when (as occurred here) "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit . . . ." 489 U.S. 593, 597 (1989).

Second, not only did Trooper McClure not seize Ferguson when he activated his lights and siren, but Trooper McClure *never* seized Ferguson. An individual is not seized for purposes of the Fourth Amendment unless there is "an intentional acquisition of physical control" by the government, either as a result of the government using physical force against the individual or as a result of the individual submitting to a show of authority. *Id.* at 596-98. In this case, Trooper McClure never acquired "physical control" over Ferguson; to the contrary, Ferguson successfully *eluded* being

seized.  *See California v. Hodari D.*, 499 U.S. 621, 625-29 (1991) (holding that officers' "show of authority" in pursuing suspects in a foot chase was not a Fourth Amendment "seizure" when the suspects did not submit to the show of authority).

Finally, even if Trooper McClure conducted a "traffic stop" when he activated his lights and siren, that seizure would have been lawful because Trooper McClure had personally witnessed Ferguson commit a number of offenses.  Ferguson asserts that Trooper McClure activated his lights and siren "before [Ferguson] had committed a traffic violation."  ECF No. 83 at 10.  Ferguson is incorrect.  At the evidentiary hearing before Judge Noel, the prosecutor played squad-car video of Trooper McClure's pursuit of Ferguson and asked Trooper McClure to narrate.  During his narration, Trooper McClure testified that radar showed that Ferguson was driving 92 miles per hour,[1] and Trooper McClure pointed out a number of other traffic offenses committed by Ferguson.  A few minutes into the video, the prosecutor paused the video and questioned Trooper McClure as follows:

> Q:   . . . At this point just how many traffic violations do we have, misdemeanors and felonies?

---

[1] Ferguson argues that "[t]he officer relied on no instruments to determine that petitioner was speeding" and that "petitioner was never observed speeding by the officer."  ECF No. 58 at 4.  Ferguson is incorrect about this as well.  Trooper McClure testified that he had observed Ferguson speeding, and that his observations had been confirmed by radar.  ECF No. 70 at 21-22.

> A. We have . . . speed[ing]. We have fail[ing] to stop at a red semaphore, no signal, extinguishing lights, not operational sunset to sunrise, an additional red light violation. With the Metro Transit bus, I would say reckless driving.
>
> Q. Would you—at this point have you put your lights and sirens on?
>
> A. *No, not at this point.*
>
> Q. Okay. You ultimately do, correct?
>
> A. Yes, sir.
>
> Q. All right. I will continue the video . . . .

ECF No. 70 at 24-25 (emphasis added). Contrary to Ferguson's claim, then, Trooper McClure witnessed Ferguson commit a number of offenses *before* he turned on his lights and siren.

In sum, Aligada did not render ineffective assistance of counsel when he failed to challenge the "traffic stop" of Ferguson. There was no traffic stop of Ferguson—and Aligada can hardly be faulted for failing to challenge a traffic stop that did not exist. Moreover, even if there had been a traffic stop, that traffic stop would have been lawful under the Fourth Amendment, because Trooper McClure had witnessed Ferguson commit a number of traffic offenses. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th

-11-

Cir. 1994) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance.").[2]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant Calvin James Ferguson's motion to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255 [ECF No. 57] is DENIED; and

2. No certificate of appealability will issue.

---

[2]Ferguson also seems to contend (*see* ECF No. 58 at 3-4) that not only was there an insufficient factual basis to support the legality of the (non-existent) "traffic stop," but also that there was an insufficient factual basis to support the Court's application of a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. *See* ECF No. 49 at ¶ 21. The Court notes that, contrary to what Ferguson seems to assume, that sentencing enhancement was applied because Ferguson "possessed the firearm in connection with . . . fleeing a police officer in a motor vehicle." *Id.* The enhancement was not applied because Ferguson possessed the firearm in connection with speeding.

At no point in his brief does Ferguson contend that he did not flee from Trooper McClure in a motor vehicle; to the contrary, Ferguson seems to concede that he did. ECF No. 83 at 6. (The evidence in the record also leaves no doubt about the matter.) Moreover, "ordinary questions of guideline interpretation" generally "may not be re-litigated under § 2255," as long as the defendant's sentence does not "exceed[] the statutory maximum for the offense of conviction." *Sun Bear v. United States*, 644 F.3d 700, 704-06 (8th Cir. 2011) (en banc) (citations omitted). Ferguson's 46-month sentence fell well below the 10-year statutory maximum for his offense. *See* 18 U.S.C. § 924(a)(2).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 2, 2019                                  s/Patrick J. Schiltz
                                                     Patrick J. Schiltz
                                                     United States District Judge